DISTRICT COURT.                          NOVEMBER 26, 1861.
                        ADMIRALTY.

## THE AMELIA.

1. During the civil war the United States were not at war with literature; therefore, books shipped by a resident of a hostile district, but not for commercial purposes, were not liable to confiscation as prize.

2. Persons sent in a prize ship for examination are not subject to the order of the Court. The principle of "The Salvor," (*ante*, p. 531), affirmed.

3. The destination of a vessel was to a blockaded port; but the voyage was undertaken in ignorance of the blockade, and no attempt was made to violate it. *Held*, that the vessel and cargo were confiscable so far only as they belonged to enemies of the United States.

4. Non-claim for a period of more than eight months from the capture, with the absence of proprietary documents, justifies an order of sale for the unclaimed portions of the cargo.

5. Formula of decrees.

### PRIZE.

#### OPINIONS AND DECREES.

CLAIM of MITCHELL KING, of Charleston, South Carolina, for two cases of books marked "The University of North Carolina, Chapel Hill, North Carolina, care of Mitchell King, Esq., Charleston, South Carolina, Nos. 1 and 2," received and filed on the 14th instant, with the written consent of the

District Attorney of the United States. And the affidavit of John Penington, taken on the 16th instant, and this day filed, being read by consent, and the letter of the said claimant therein mentioned being put in evidence, and it appearing to the Court that other parts of the said letter than are extracted in the said affidavit should be considered in forming an opinion as to the sufficiency of the authority conferred upon Mr. Penington to receive the said two cases of books, the said letter is filed of record. And the said claim having been considered upon the above mentioned papers, and upon the documents on board of the captured vessel.

## CADWALADER, J.

Though this claimant, as the resident of a hostile district, would not be entitled to restitution of the subject of a commercial adventure in books, the purpose of the shipment in question, gives to it a different character. The United States, in prosecuting hostilities for the restoration of their constitutional authority, are compelled incidentally to confiscate property captured at sea, of which the proceeds would otherwise increase the wealth of that district. But the United States are not at war with literature in that part of their territory. The case of the pictures of the Philadelphia Academy of Fine Arts, liberated by a British Colonial Prize Court in the war of 1812, the prior proceeding in France mentioned in the report of that case, and the French and other decisions upon cases of fishing vessels, are precedents for the decree which I am about to pronounce. Without any such precedents, I would have had no difficulty in liberating these books.

Whereupon, it is ordered, adjudged and decreed, that the said two cases of books be liberated from the custody of the marshal and delivered to the said John Penington.

A LETTER was received in this case from the prize master which was as follows:

Eastern District of Pennsylvania.
In the U. S. District Court.

To the Hon. JOHN CADWALADER,
Judge of said Court:

The undersigned begs leave to report, that about one o'clock, P. M. of Saturday, 29th June, 1861, he gave the possession of the ship Amelia, of which he has been prize master, to the marshal of this district, and has since that time aided him in the custody and safe keeping of the said ship and her cargo; and that he has allowed all the persons sent with him on the ship to this port, viz., the captain, his wife, the cook and his wife and daughter, to go ashore, for their greater comfort, there being no conveniences for them on board the vessel; and each and all of them remaining willingly, subject to the orders of the judge of this court. (Signed),

Acting Master, JOHN W. BENTLEY,
U. S. Navy, and Prize Master of ship Amelia.

Philadelphia, 1st July, 1861.

BY THE COURT:

The prize master is mistaken in supposing that the persons mentioned in the above statement are subject to the order of the Court. On the contrary, they are in custody of the naval captors, unless they have been duly discharged. The Court cannot interfere to direct their discharge. But if the commissioner of the court and the prize master concur in opinion that there is no reason for their longer detention, the Court cannot perceive that their discharge would be censurable. This, however, is a matter for naval, and not for judicial regulation.

The prize master, stating that his duties may require him to leave Philadelphia, the Court add, that so soon as the persons in his custody shall have been discharged, or their custody otherwise regulated by the proper naval authority, the Court perceive no necessity for his remaining here longer. But so far as naval duties may be concerned, the

prize master will, in this respect, judge for himself what should be his course of conduct.

## DECREE.

I, JOHN CADWALADER, Judge of the District Court of the United States for the Eastern District of Pennsylvania, duly authorized under the Constitution and laws of the United States to hear and determine in the said district all causes and complaints as to ships or vessels, and goods, etc., seized or taken as prize, having heard and considered the merits and circumstances of a certain cause or proceeding respecting the seizure of a certain ship called the Amelia, whereof John M'Kensie was master, her tackle, apparel and furniture, captured as prize by the steamer Union of the Navy of the United States, under command of Captain John R. Goldsborough, and brought into the port of Philadelphia in the said district, which cause or proceeding was lately and still is pending before me; And it appearing that the said capture was made on the high seas, off the harbor of Charleston, in the State of South Carolina, on the 18th day of June, in the year 1861, at and before which time civil war existed between the United States and the inhabitants of the said State of South Carolina and other persons confederated for hostile purposes against the United States, by reason whereof the judicial tribunals of the United States for South Carolina were closed and could not be kept open, nor could the laws of the United States be executed by their officers and ministers of justice, or otherwise peaceably enforced or executed within the said State, and that Charleston aforesaid was, at and before the capture aforesaid, in the hostile occupation of enemies of the United States in the said civil war; And George A. Coffey, Esquire, Attorney of the United States in and for the said Eastern District of Pennsylvania, having by libel, allowed in the said proceeding, alleged that at the time of the said capture the port of Charleston aforesaid was blockaded by said forces of the United States, and that the said ship when captured was attempting to violate the said

blockade, and having further in the said libel alleged that the said ship, her tackle, apparel and furniture, and the said goods, wares and merchandise were the property of insurgents, traitors and public enemies, and were for the reasons aforesaid or otherwise, liable to confiscation or condemnation as lawful prize; And the said John M'Kensie, master as aforesaid, having in and by a certain claim intervened in the said proceeding for the interest of himself, George Agry and James Welsman (described in said claim as John M'Kensie, a native of Hull, in Yorkshire, England, naturalized as a citizen of the United States at Charleston aforesaid, in the year 1851, George Agry, of Hallowell, in the county of Kennebec, and State of Maine, a citizen of the United States, James Welsman, of Charleston aforesaid, a citizen of the United States), and making claim of the said ship, her tackle, apparel and furniture, and alleging that he, the said John M'Kensie, was, as master, in possession thereof at the time of her said capture, and that the said John M'Kensie, George Agry and James Welsman, before, at and from the commencement of the voyage in which she was captured as aforesaid, until and at and from the time of her said capture were and still are the owners of the said ship, her tackle, apparel and furniture in the following proportions, to wit: the said George Agry of two-eighths parts, the said James Welsman of five-eighths parts, and the said John M'Kensie of one-eighth part thereof, to whom and to no other persons, the same do, and will, if restored, belong in the said shares and proportions, and praying the liberation of the same, and restoration thereof to him for the said alleged owners, and the condemnation of the captors in damages and costs, and the cause having been heard upon the said libel and claim, and upon the papers, proofs and examinations, and it appearing that the said vessel, at the time of the said capture was destined to the said port of Charleston, which was then effectively blockaded by the naval forces of the United States, but there not appearing to have been any such notice of the said blockade as to render her confiscable by reason of such

destination alone, and no breach of the said blockade after knowledge thereof appearing to have been committed or attempted by those navigating her, the Court was of opinion that upon the question of breach or attempted breach of blockade she was not confiscable; but upon the question of hostile ownership, it appearing that the said ship, her tackle, apparel and furniture were at the time of the said capture the property of enemies of the United States in the said civil war, the Court afterwards, on the sixth day of September, in the year 1861, by interlocutory decree pronounced the same to be as such or otherwise confiscable, and therefore condemned the same as good and lawful prize, and on the application of the said Attorney of the United States ordered that the said ship, her tackle, apparel and furniture be publicly sold by the marshal, according to the course and practice of the Court and that the proceeds of the sale be brought into the registry of the court, to abide its order and direction.

## OPINION AND DECREE.

In the matter of the unclaimed portions of the cargo of the Amelia:

The prize commissioner, having as to the unclaimed portions of the cargo of this vessel, made his report under the Court's general order of 22d January, 1862, and the Assistant District Attorney of the United States praying judgment of condemnation of the same, the Court having considered the said commissioner's report and the preparatory proofs and papers in the cause, said: The evident character of the ownership of all such parts of the cargo as are fully documented makes this a proper case in respect of them, for a judgment of condemnation without the delay of a year, which in cases of non claim might otherwise be proper. As to the residue of the cargo the same course would, according to the former practice of prize courts, have been considered regular and proper on account of the absence of proprietary documents. I do not apply with rigor the former rules of proceeding under this head, because, in the case of sailing vessels, the

proprietary documents of particular shipments are, in time of peace, very frequently sent by steamers, that they may be at hand before the arrival of the shipments. This practice is not to be encouraged so as to sanction its continuance during such relations as now unfortunately exist between the United States and the inhabitants of certain States of which South Carolina is one. But the date of the voyage in which this vessel was captured makes an exception in favor of shippers of undocumented parts of the cargo proper to *some* extent. The question is to *what* extent. I do not think that there is any reason for so long a delay as that of a year. The reason for the indulgence in this case for example is founded upon an assumption that the missing papers, if the property were in persons entitled to claim, would long before this time have been so forwarded that they could have made their claims.

The non claim for so long a period with the absence of proprietary documents therefore makes a decree of condemnation of these as well of the other unclaimed portions of the cargo proper. Therefore, the clerk will enter a decree of condemnation of all unclaimed portions of the cargo. But no writ of sale will issue until the return of the re-survey and appraisement which has been ordered.